George STEVENSON, Terrance Stevenson, and Richard Schenna, Plaintiffs,

v.

The TOWN OF OYSTER BAY, The Town of Oyster Bay Town Board, John Venditto, individually and as The Town of Oyster Bay Supervisor, Angelo A. Delligatti, individually and as a Town of Oyster Bay Councilman, Leonard B. Symons, individually and as a Town of Oyster Bay Councilman, Joseph D. Muscarella, individually and as a Town of Oyster Bay Councilman, Christine J. Preston, individually and as a Town of Oyster Bay Councilman, Bonnie A. Eisler, individually and as a Town of Oyster bay Councilman, Anthony D. Macagnone, individually and as a Town of Oyster Bay Councilman, Martha S. Offerman, individually and as the Town of Oyster Bay Town Clerk, Defendants.

No. 04 CV 4508(ADS)(WDW).

United States District Court, E.D. New York.

May 23, 2006.

William J. Eppig, Esq., West Islip, NY, for the Plaintiffs.

Gregory J. Giammalvo, Oyster Bay, NY, by Frank Scalera, Deputy Town Attorney, for the Town of Oyster Bay.

### *MEMORANDUM OF DECISION AND ORDER*

SPATT, District Judge.

George Stevenson, Terrance Stevenson, and Richard Schenna (collectively, the "plaintiffs") bring this action against the Town of Oyster Bay (the "Town"), The Town of Oyster Bay Town Board (collectively, "Tobay"), several Town Councilmen and Councilwomen, and two Town Clerks (collectively, the "individual defendants"), pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1988 for violations of the Fourteenth Amendment to the United States Constitution.

There are presently three motions before the Court: (1) the defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56; (2) the plaintiffs' cross-motion for summary judgment; and (3) the plaintiffs' motion for leave to conduct a supplemental deposition of Martha Offerman, Town Clerk of the Town of Oyster Bay.

### I.   BACKGROUND

The plaintiffs are professional clam-diggers. In early September 2003, the plaintiffs sought to clam in the waters off of the Town of Oyster Bay. In order to do so, the plaintiffs were required by the Town to first obtain clamming licenses. The Town's code contains a licensing provision that states:

> Applications for shellfish permits shall be made in duplicate in writing on a form prescribed by the Town Board and issued by the Town Clerk, and shall set forth an applicant's name, address, zip code, age, weight, height, color of hair and eyes. **Before issuing a commercial permit, the Town Clerk shall be satisfied as to the identity of the applicant and may require the applicant to submit proof that he is a resident and has resided in the Town of Oyster Bay for one (1) year.**

Town Code of Oyster Bay ("Town Code") § 196–6 (emphasis added). A separate provision of the Town Code provides that:

> Any person over the age of sixteen (16) **who is a resident of the town and shall have resided in the town for at least one (1) year before the time of his application** may obtain a commercial permit for taking shellfish and/or for assisting with the taking of shellfish upon making proper application theretofore to the Town Clerk.

Town Code § 196–8 (emphasis added). A "resident," as defined by the Town Code, is "a person who has his principal place of abode and domicile in the Town of Oyster Bay." Town Code § 196–4.

In support of their applications for clamming licenses, the plaintiffs submitted as

proof of their residency within the Town a copy of a lease agreement they signed for an apartment located in Farmingdale, New York. Farmingdale is within the Town of Oyster Bay. The plaintiffs signed the lease for the Farmingdale apartment on September 1, 2003. The first day of September, 2003 is either the same day, or the day immediately preceding the day the plaintiffs submitted their applications for clamming licenses to the Town.

On October 28, 2003, the Town Clerk of the Town of Oyster Bay wrote to the plaintiffs' attorney informing him that she was denying all three of the plaintiffs' applications. The letter stated:

> I am denying all three applications.
>
> George Stevenson because he ignored our process, came into our harbor and was cited by the Bay Constable. He also threatened to kill another Oyster Bay Bayman who was legally working. A report has been filed with the police.
>
> Terrance Stevenson because our investigation has indicated that he is really a full time resident of Islip and winters in Florida. His name on the lease is merely a ploy to work our waters.
>
> Richard Schenna because of the multitude of charges that have appeared on his record, both environmental and criminal, not the least was a charge of resisting arrest.

Sclera Aff. Ex. G. In support of the Town's decision to deny the plaintiffs' applications, the Town Clerk cited Section 147–7(B)(2) of the Code of the Town of Oyster Bay. This provision vests the Town Clerk with broad discretion to refuse a license or permit to any person who in the Town Clerk's judgment is unsuitable to conduct the particular activity.

On October 20, 2004, the plaintiffs commenced this action. On July 15, 2005, the plaintiffs filed an amended complaint. The amended complaint alleges causes of action

under 42 U.S.C.1983, 1985(3), and 1988 for violations of the Equal Protection Clause of the Fourteenth Amendment. The plaintiffs contend that, notwithstanding the clear language of the letter from the Town Clerk, their applications were in fact denied because of the plaintiffs' failure to satisfy the one-year residency requirement of the licensing statute. The plaintiffs argue that this residency requirement is unconstitutional. Specifically, the plaintiffs' assert that the Town's one-year residency requirement for clamming licenses impermissibly discriminates against nonTown residents, and that the Town's reliance on this provision is inconsistent with their fundamental right to travel guaranteed by the Privileges and Immunities Clause of Article IV of the United States Constitution. The amended complaint also contains a cause of action for personal injuries that the plaintiffs allegedly sustained while clamming in the more hazardous waters of the Long Island Sound.

As a preliminary matter, the plaintiffs have withdrawn their cause of action for personal injuries, and concede that none of the individual defendants have been properly served. Accordingly, the fourth cause of action in the amended complaint for personal injuries will be dismissed, and the amended complaint will be dismissed in its entirety as against all of the individual defendants.

On March 16, 2006 and March 31, 2006, respectively, the defendants made a motion for summary judgment to dismiss the amended complaint and the plaintiffs cross-moved for summary judgment in their favor. The defendants argue that summary judgment is appropriate because, without regard to the one-year durational element of the Town's residency requirement, (1) the plaintiffs never established "residency," as defined by the Town Code, in the first instance thus obviating the

need for the Court to determine whether the one-year requirement is lawful; and (2) regardless of the Town's residency requirement or its durational element, the Town Clerk retained discretion to deny clamming permits to those individuals whom the Clerk deemed unsatisfactory.

On the other hand, the plaintiffs argue that their act of signing the lease for the Farmingdale apartment was sufficient to confer Town "residency" on the plaintiffs within the Town; that the Town denied their applications because of the plaintiff's failure to satisfy the "durational" residency requirement; and that requiring an applicant for a commercial clamming license be a resident for a period of one year before he becomes eligible for the permit is unconstitutional because it discriminates against non-residents in favor of residents.

In their motion papers the plaintiffs also raise, for the first time, a challenge to Section 147–7 of the Town Code. In this regard, the plaintiffs argue that Section 147–7 is "unconstitutional because the Code gives the licensing commissioner too broad discretion; was selectively applied to the plaintiffs; and was a sham because its intent was to enforce its durational residency requirement for a license which the Town knew was unconstitutional." Even though not pleaded in the amended complaint, the Court finds that this argument would not afford relief to the plaintiffs. Section 147–7 provides: "The license commissioner may also refuse a license or permit to any person who in his judgment shall be an undesirable person or incapable of properly conducting the activity, trade or business desired." Town Code § 147–7(B)(2)("Grounds for Denial"). The plaintiffs have failed to set forth any ground for relief under this provision. Also, it appears that there may have been grounds to decline the permits under this Section of the Town Code.

■ While these motions were under consideration, the Court became aware of an issue regarding the plaintiffs' standing to pursue their claims as framed in the amended complaint. The issue of standing is jurisdictional in nature and, thus, may be raised by the Court without motion of one of the parties. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("[Standing] is the threshold question in every federal case, determining the power of the court to entertain the suit."). In this regard, the Court requested the parties to each submit a letter on the issue of standing in the context of the plaintiffs' claims. Although both parties responded, neither the plaintiffs nor the defendants identified or discussed the precise issue the Court was contemplating, which is discussed below.

## II. DISCUSSION

### A. The Equal Protection Clause

The plaintiff's equal protection claims are grounded in the Fourteenth Amendment of the United States Constitution. The Equal Protection Clause of the Fourteenth Amendment guarantees that no State "shall deny to any person within its jurisdiction the equal protection of the laws." This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citation omitted).

■ In order to establish a claim under the Equal Protection Clause, the plaintiff must show that: (1) she was selectively treated compared with others similarly situated; and (2) the selective treatment was based on impermissible considerations, including the intent to inhibit or punish the exercise of a constitutional right. *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d

Cir.2000) (citation omitted); *Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir.1996); *LaTrieste Restaurant & Cabaret v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994). Here, the plaintiffs complain that the Town's enforcement of its licensing provisions discriminates against nonresidents of the Town of Babylon in favor of similarly situated Town residents, and that this selective treatment is based on an impermissible intent to inhibit nonresidents' constitutional right to travel in pursuit of their trade.

### B. The Right to Travel under the Privileges and Immunities Clause

■ The Privileges and Immunities Clause of Article IV states that "[t]he citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." One such privilege is the right to travel between the "several States." State laws that discriminate against out-of-state residents solely by reason of their place of residency, particularly if the discrimination affects those persons' pursuit of their occupation, risk being invalidated under the Privileges and Immunities Clause, unless there is a compelling government reason for the discrimination. For such cases, see, for example, *Supreme Court of N.H. v. Piper*, 470 U.S. 274, 280, 105 S.Ct. 1272, 1276, 84 L.Ed.2d 205 (1985) (New Hampshire's residency requirement for admission to the bar); *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) (Alaskan statute requiring all contracts in connection with construction of Alaskan oil and gas pipelines to give preference in hiring to Alaskan residents); *Austin v. New Hampshire*, 420 U.S. 656, 95 S.Ct. 1191, 43 L.Ed.2d 530 (1975) (commuter income tax imposed only on out-of-state residents who work in state); *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (state statute prohibiting abortions performed on

out-of-state residents); *Mullaney v. Anderson*, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952) (statute of Territory of Alaska charging non-residents forty-five dollars more for commercial fishing license than residents).

■ In this case, the plaintiffs challenge a local Town law rather than a State law. The United States Supreme Court has made clear that the Privileges and Immunities Clause applies to municipal and local laws with the same force as it does to laws of state-wide applicability. *See United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 215–218, 104 S.Ct. 1020, 1025–28, 79 L.Ed.2d 249 (1984). Recognizing as much, the plaintiffs rely on *United Building* in support of their argument that the Town's licensing provision is unconstitutional.

■ However, the Court in *United Building* also held that the protection of the Privileges and Immunities clause is only available to "out-of-state" residents. Therefore, persons aggrieved by a residency requirement of a municipality located within the state in which that person is a resident lack standing to challenge that law. 465 U.S. at 217, 104 S.Ct. at 1027; *see also J.F. Shea Co., Inc. v. City of Chicago*, 992 F.2d 745, 749 (7th Cir.1993) (holding that in-state residents had no standing to challenge city ordinance under the Privileges and Immunities Clause); *Salem Blue Collar Workers Ass'n v. City of Salem*, 832 F.Supp. 852, 856–57 (D.N.J. 1993) (holding that New Jersey resident had no standing to challenge a New Jersey local ordinance under the Privileges and Immunities clause), *aff'd*, 33 F.3d 265 (3d Cir.1994); *Shepherd v. State Dep't of Fish & Game*, 897 P.2d 33, 41 (Alaska 1995) ("It is now settled law that in-state residents lack standing to challenge a state statute

or municipal ordinance under the Privileges and Immunities Clause.").

■ The plaintiffs' are undeniably "in-state" because they were residents of the State of New York at the time they filed their applications for clamming licenses. George Stevenson testified at his deposition that he resided with his wife and children in Babylon, County of Suffolk, New York, and then in Deer Park, County of Suffolk, New York prior to signing the Farmingdale lease. George Stevenson Aff. at 9–10. Terrance Stevenson testified at his deposition that he resided with his wife and children in West Islip, County of Suffolk, New York for twenty years prior to signing the Farmingdale lease. Terrance Stevenson Aff. at 7–8. Richard Schenna testified that he resided in Centerport, County of Suffolk, New York prior to signing the Farmingdale lease. Schenna Aff. at 10–12. As "in-state" residents, the plaintiffs lack standing to challenge the Town's residency requirement. Considering that the amended complaint is narrowly drawn to the extent that it only challenges the Town's one-year residency requirement under the Privileges and Immunities Clause, the Court must grant the defendants' motion and dismiss the amended complaint.

## III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that the plaintiffs' cross-motion for summary judgment is DENIED; and it is further

ORDERED, that the plaintiffs' motion for leave to conduct a supplemental deposition of Martha Offerman, Town Clerk of the Town of Oyster Bay, is DENIED; and it is further

ORDERED, that the defendants' motion for summary judgment is GRANTED and the amended complaint is DISMISSED; and it is further

ORDERED, that the jury selection scheduled for June 16, 2006, is cancelled; and it is further

ORDERED, that the Clerk of the Court is directed to close the case.

SO ORDERED.